```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                     :
STEVE JONES
                                     :

     v.                              :    Civil Action No. DKC 23-2340

                                     :
NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY                    :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance coverage dispute is the motion for summary judgment filed by Defendant Nationwide Mutual Fire Insurance Company ("Defendant" or "Nationwide"). (ECF No. 36). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I. Background[1]**

Plaintiff Steve Jones ("Plaintiff") owns a property located at 8750 Plenty Highlands Place, Port Tobacco, Maryland 20677 ("Property"), which is covered by Nationwide Insurance Policy #5219DP083240 ("Policy"). (ECF No. 36-5, at 4).

The Policy provided that Defendant would indemnify Plaintiff for covered losses on the Property. (ECF No. 36-5, at 8). As relevant here, the Policy states:

---

[1] Unless otherwise noted, the following facts are undisputed and construed in the light most favorable to the nonmoving party.

> **Coverage A — Dwelling and Coverage B — Other structures**
>
> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:
>
> . . .
>
> 2. Caused by:
>
> . . .
>
> h.  (1) wear and tear, marring, deterioration;
>     (2) inherent vice, latent defect, mechanical breakdown . . . .

(ECF No. 36-5, at 13).

On April 29, 2021, the Property was damaged by a windstorm. Shortly thereafter, Plaintiff submitted an insurance claim to Nationwide. On May 11, 2021, Plaintiff contacted Semper Fi Public Adjusters LLC ("Semper Fi") to evaluate the damage to the Property. (ECF No. 36-9, at 1). On May 25, 2021, at Nationwide's request, Michael Ammer Jr. of Ladder Now/Seek Now conducted an inspection of the Property. (*See* ECF No. 36-6). Mr. Ammer opined that the "runof[f] gutters [were] pulled off by wind" and that the facia board was cracked, "likely cause[d]" by deterioration. (*Id.*).

On June 8, 2021, Nationwide determined that the damage to Plaintiff's gutters was covered under the Policy, but denied coverage for the roof and interior leaks. (ECF No. 36-7). In the June 8, 2021 letter, Nationwide explained:

2

> [o]ur review showed that the fascia board is cracked due to wear and tear and the Cupola was improperly installed which both are exclusions on your policy. We expressly reserve all other rights, defenses, or contentions, which are available to us under the policy of insurance, by law or otherwise, and do not waive any such rights or defenses which we now have or which may become known to us in the future.

(*Id.*).

Plaintiff submitted a dispute of Nationwide's denial of coverage. In response, Nationwide had Tyler Reehl of Ladder Now/Seek Now conduct a second inspection on June 15, 2021. (*See* ECF No. 36-8). Mr. Reehl opined that the interior damage was caused by improper installation, not storm damage. (*Id.* at 4-6).

On September 8, 2021, Semper Fi produced an estimate of $148,463.70 to repair damage to Plaintiff's home, including both interior and exterior repairs. (ECF No. 36-9). The estimate listed the type of loss as "Hail." (*Id.*).

On March 8, 2022, Plaintiff filed an administrative complaint against Nationwide General Insurance Company[2] ("Nationwide General") with the Maryland Insurance Administration ("MIA"), alleging that Nationwide General's failure to pay Semper Fi's estimate lacked good faith, in violation of Md. Code Ann., Ins. §

---

[2] The parties do not explain what relationship, if any, Nationwide General Insurance Company has with Defendant.

3

27-1001. (ECF No. 36-10, at 4). MIA denied Plaintiff's requested relief finding that:

> Plaintiff has not established by a preponderance of the evidence that [Nationwide General] is obligated under the Policy to cover the Claim. Further, Plaintiff has not demonstrated the [Nationwide General] breached any duty owed to Plaintiff or failed to act in good faith in connection with Plaintiff's claim.
>
> Plaintiff has not satisfied his burden of demonstrating that [Nationwide General] is obligated to cover this Claim, as the record reflects that the insurer under the Policy is Nationwide Mutual Fire Insurance Company, not [Nationwide General].

(*Id.* at 4-5).

On January 5, 2023, Plaintiff filed a second administrative complaint with MIA, alleging that Defendant's actions violated Md. Code Ann., Ins. § 27-1001. (ECF No. 36-11, at 2). MIA found that:

> To date, Defendant has not received any letter of representation or public adjuster contract evidencing [SemperFi]'s representation of Plaintiff for this matter. [SemperFi] has also not provided Defendant with any additional documentation disputing the applicability of the policy exclusions relied on by Defendant, or support for the significant differences in scope and amount of dwelling repairs. Despite the allegations in the Complaint, Plaintiff has not offered any evidence that Defendant ignored the facts Plaintiff presented, refused to justify its position, or refused to negotiate the Claim with Plaintiff's alleged public adjuster. Plaintiff has also not referenced any provision of the Policy that would require Defendant to provide coverage for additional repairs not resulting from

4

> direct physical loss to the covered dwelling or for the public adjuster fees included in SFPA's estimate.
>
> Based on these findings, Plaintiff has failed to meet his burden to prove that Defendant breached any obligation owed to him under the Policy or that he is entitled to any additional payment under the policy.

(ECF No. 36-11, at 9).

On August 25, 2023, Plaintiff filed suit in this court, alleging breach of contract and lack of good faith in handling his insurance claim. (ECF No. 1). Plaintiff seeks payment in the amount of $144,263.70, representing the difference between Semper Fi's estimate and the amount paid by Defendant. (*Id.*).

On December 23, 2024, Defendant moved for summary judgment (ECF No. 36). Plaintiff opposed the motion on January 10, 2025 (ECF No. 39), and Defendant replied on January 23, 2025 (ECF No. 40). On April 17, 2025, Plaintiff's counsel moved to withdraw as counsel (ECF No. 41), and on May 28, 2025, the court granted the motion and advised Plaintiff that he would be proceeding *pro se* (ECF No. 44).

## II. Standard of Review

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving

5

party bears the burden to demonstrate the absence of a genuine dispute of material fact. *Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). If the moving party meets this burden, the burden then shifts to the non-movant to show specific facts demonstrating a genuine issue for trial. *Id*. A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**III. Analysis**

    **A.    Breach of Contract**

Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because, as a matter of law, Plaintiff is unable to show that the April 29, 2021 storm caused the damage to the Property, and thus the damage does not fall within the scope of the Policy. (ECF No. 36-1, at 7-10). Specifically, Defendant contends that any opinion regarding the

6

cause of the damage to the Property requires expert testimony, and because Plaintiff's only designated expert, Jonathan Pezold, was struck by the court and Plaintiff has not timely designated another expert, Plaintiff "has no opinion as to what caused the damage to his property."  (*Id.* at 9).  In response, Plaintiff argues that "[t]his truly is not a dispute of causation" and instead "is a dispute of proper scope to repair a covered loss" because Defendant has already conceded that at least a portion of the damage to the Property resulted from the storm.  (ECF No. 39, at 5).  Additionally, Plaintiff contends that "[a] contractor (such as the public adjustor in this matter . . .) may speak to codes and proper methods of repair" and that a lay person may testify as to the costs of construction because the costs "do not require scientific knowledge[.]"  (ECF No. 39, at 5).

Insurance policies are interpreted according to the same rules as any other contract.  *See Rouse v. Fed. Ins. Co.*, 991 F.Supp. 460, 465 (D.Md. 1998).  Courts are instructed to interpret an insurance policy's terms "as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." *United Cap. Ins. Co. v. Kapiloff*, 155 F.3d 488, 495 (4th Cir. 1998)(applying Maryland law).  Notably, the burden of establishing coverage under an insurance policy rests with the insured.

7

*Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F.Supp.3d 494, 512 (D.Md. 2019) (citation modified). The parties dispute whether Plaintiff can demonstrate that the April 29, 2021 storm caused the damage to the roof, and thus whether the damage is covered under the Policy.

In a similar case, *Lawanson v. Nationwide Insurance Co.*, No. 23-cv-806-BAH, 2025 WL 592843 (D.Md. Feb. 24, 2025), Judge Hurson explained in detail why expert evidence is necessary to demonstrate that alleged damages are covered under an insurance policy. Judge Hurson began by analyzing another similar case with almost identical arguments:

> *Pryszmont v. Allstate Vehicle and Property Insurance Company* is instructive, as the plaintiff in *Pryszmont* made nearly identical arguments to those advanced by Plaintiff here. 2024 WL 3090384, at *1. In *Pryszmont*, the plaintiff's home was purportedly damaged by a storm. *Id.* The defendant insurance company, Allstate, inspected the damage and issued a repair estimate totaling $870.66. *Id.* The plaintiff then hired Semper Fi to represent her on the insurance claim, and Semper Fi prepared an estimate totaling $121,696.75, which included damages to additional areas of plaintiff's property. *Id.* Allstate issued a partial denial letter in response to Semper Fi's estimate and indicated that it was unable to provide coverage for the claimed damages to certain parts of the property because such damages appeared to not be covered under the policy. *Id.* at 2. Litigation ensued, and Allstate argued in its motion for summary judgment that "an expert witness is required to opine on the cause of potentially covered damages under an insurance contract." *Id.* at

8

> 3. The *Pryszmont* court noted that "neither party present[ed] mandatory authority regarding whether an expert witness is required to opine on the cause of property damages in this specific context." *Id.* However, after reviewing relevant authority, the court held that "under the factual circumstances of this case, [the] plaintiff is required to prove such allegations through an expert witness but has failed to do so." *Id.* at 4. Thus, the court awarded summary judgment to defendant. *Id.* at 8.

*Lawanson*, 2025 WL 592843, at *4. The facts here compel the same conclusion as reached in both *Lawanson* and *Pryszmont*.

This court struck Plaintiff's deficient expert report on October 21, 2024, and the time for expert disclosures pursuant to Fed.R.Civ.P. 26(a)(2) has now passed. Plaintiff makes the same exact argument as the plaintiff in *Lawanson*, that "[t]he fact that certain claims may be more robust or otherwise bolstered with an expert certainly does not prevent a jury from hearing them, and a jury may give whatever weight to whatever witness' opinion they see fit." (ECF No. 39, at 3). Plaintiff concedes that "[the public adjustor] may not be able to prove certain specific components to contravene Defense's theory," but argues that "the entirety of relevant facts may be proven without an expert." (*Id.*).

Plaintiff's argument here is not well founded. As Judge Hurson explained:

9

> The Court concludes that "an expert witness is necessary to opine on whether the damages set forth in the Semper Fi estimate were caused by the [ ] storm and therefore fall within the Policy's scope." *Pryszmont*, 2024 WL 3090384, at *6. Whether the damage to the interior and exterior of the property was a result of the storm or "deterioration and improper installation of the roof," ECF 47-1, at 4, is "beyond the ken of the average layman." *Adams* [*v. NVR Homes, Inc.*], 142 F.Supp.2d [649,] 654 [(D.Md. 2001)]. In short, a lay witness cannot testify about the cause of the damage to Plaintiff's property. The intricacies of determining, for example, whether the damage was man-made as a "result of dropped or dragged equipment during the installation and/or marring from human activity on the roof," is not a matter of common knowledge.[ ] ECF 47-1, at 7.

*Lawanson*, 2025 WL 592843, at *6.  Plaintiff cannot rely on the testimony of a lay witness to establish the estimated cost of repair to the Property.  *See Pryszmont*, 2024 WL 3090384, at *6 ("The overwhelming majority of federal courts to consider this issue have held that repair cost estimates in breach of insurance contract cases must be supported by expert, rather than lay, opinions.") (collecting cases)).  Nor can Plaintiff rely on the testimony of a lay person to determine whether the damage to the Property was caused by "hail" or by "age-related deterioration" and "improper installation."  *Id.* at *4 ("Courts frequently hold that lay witnesses cannot testify regarding causation where determining the cause of a particular incident or occurrence is beyond common experience.") (collecting cases).  Further, while

10

Plaintiff correctly asserts this is the general rule and not a "universal requirement for expert testimony," Plaintiff does not argue or produce any evidence that an exception to the general rule applies here.  *See Pryszmont*, 2024 WL 3090384, at *6 (first citing *Providence Piers, LLC v. SMM New England, Inc.*, No. 12-532S, 2015 WL 9699936, at *8 (D.R.I. June 21, 2024); and then *Steffy v. Home Depot, Inc.*, No. 1:06-CV-02227, 2009 WL 4279878, at *9 (M.D.Pa. June 15, 2009)).

Because Plaintiff has not come forward with expert testimony, he cannot prove that the damages, beyond those already paid by Defendant, are covered under the Policy and thus, cannot succeed on his breach of contract claim.  Accordingly, Defendant will be granted summary judgment on Count I.

### B. Lack of Good Faith

In Count II, Plaintiff claims that Defendant failed to handle his insurance claim in good faith.  "Maryland provides a special cause of action for lack of good faith by a property, casualty, or individual disability insurer in handling claims under insurance policies issued, sold, or delivered in Maryland."  *Barry v. Nationwide Mut. Ins. Co.*, 298 F.Supp.3d 826, 829–30 (D.Md. 2018) (citing Md. Code, Cts. & Jud. Proc. § 3-1701(b)).

"Good faith" is defined as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or

11

should have known at the time the insurer made a decision on a claim." Md. Code, Cts. & Jud. Proc. § 3-1701(a)(4).

As Judge Sullivan has explained:

> Courts apply "a few basic principles" when considering lack of good faith claims. *Barry*, 298 F.Supp.3d at 830. First, the standard of good faith is judged under the "totality of the circumstances," including the following factors:
>
> [(1)] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [(2)] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [(3)] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.
> *Id.*
>
> Second, delay in handling a claim generally cannot serve as the sole basis for a lack of good faith claim. *Id.* While delay in handling a claim *may* serve as the sole basis for such a claim when the insurer does not act within the time period specified by statute or regulation for investigation of a claim, such delay "is not per se lack of good faith under the statute." *Id.*
>
> Third, an allegation that an insurer has failed to pay policy benefits cannot serve as the sole basis for a lack of good faith claim. *Id.* This is because "[i]t is well-settled under Maryland law that an insured claiming that an insurer has failed to pay policy benefits may only pursue contract remedies." *Id.* (quoting *Bierman Fam. Farm, LLC v. United Farm Fam. Ins. Co.*, 265 F.Supp.3d 633, 38 (D.Md. 2017) (collecting cases)). "An allegation of breach of contract is therefore a necessary but not sufficient condition for

> a lack of good faith claim." *Barry*, 298 F.Supp.3d at 830. In order to prevail on a lack of good faith claim, "[a]n insured must prove that an insurer breached the insurance contract," but must also prove that the insurer also acted without good faith in handling the claim. *Id.*; *Pryszmont*, 2024 WL 3090384, at *7 (same).

*Glover v. Allstate Vehicle & Prop. Ins. Co.*, No. 22-cv-2718-TJS, 2025 WL 242163, at *6 (D.Md. Jan. 17, 2025). Plaintiff's lack of good faith claim fails because Plaintiff cannot prove Defendant breached the contract. *See Lawanson*, 2025 WL 592843, at *7 (citing *Barry*, 298 F.Supp.3d at 830 ("An allegation of breach of contract is [ ] a necessary but not sufficient condition for a lack of good faith claim [under Md. Code, Cts. & Jud. Proc. § 3-1701]. An insured must prove that an insurer breached the insurance contract in order to bring a lack of good faith claim, but the insured must prove more than simply breach of contract to prevail."); *see also Glover*, 2025 WL 242163, at *6 ("Plaintiff's claim for lack of good faith fails because Plaintiff has not proven that [defendant] breached the contract."); *Pryszmont*, 2024 WL 3090384, at *7 ("[B]ecause [p]laintiff has not set forth sufficient evidence supporting her breach of contract claim, [d]efendant is also entitled to summary judgment regarding [p]laintiff's bad faith claim in Count II."). Accordingly, Defendant will be granted summary judgment on Count II.

13

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  A separate order will follow.

                                                /s/  
                                    DEBORAH K. CHASANOW  
                                    United States District Judge